Earle L. Hart, Appellant, v. O. L. Williams Veneer Company et al., Appellees.

**Gen. No. 38,918.**

Opinion

filed November 2, 1936.

WALTER A. ROONEY and FRIEDMAN, SCHIMBERG & ALSTER, all of Chicago, for appellant; SIMON H. ALSTER and IRVING MANTEL, of Chicago, of counsel.

MAXMILIAN J. ST. GEORGE, for certain appellees.

SONNENSCHEIN, BERKSON, LAUTMANN, LEVINSON & MORSE, of Chicago, for certain other appellees; HENRY S. MOSER and JEROME L. FELS, both of Chicago, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

August 21, 1935, plaintiff brought an action against O. L. Williams Veneer Co., a corporation, and others to recover $11,000 because of a claimed breach of contract. Defendants were nonresidents and were served by publication. On the same day an attachment in aid issued against Samuel Winternitz & Co., a corporation, and others. The garnishees answered that they had no funds belonging to defendants. Defendants were defaulted for want of appearance and plaintiff's damages were assessed against them for $11,000. Afterward there was a hearing, at the conclusion of which the court discharged the garnishees, vacated the judgment entered against defendants, and plaintiff appeals.

The record discloses that on June 14, 1935, some of the garnishees purchased certain property from defendants for $90,000, payable in instalments, and August 19, 1935, drew their check on the First National Bank of Chicago to the order of defendant O. L. Williams Veneer Co., Inc., for $22,500 in payment of the final instalment, mailing it to the Veneer Company at 201 East Delaware Place, Chicago, where a representative of the Veneer Company received the check and forwarded it to the Veneer Company's home office at Sumpter, South Carolina. August 21, 1935, two days after the check was mailed by the garnishees, the garnishee summons was served. August 28, 1935, the check was paid by the First National Bank of Chicago in the regular course of business. Stamped on the back of the check appears the following: ''Telephoned-O'K-To-Pay.''

Plaintiff's position is that it was the garnishees' duty to stop payment of the check since the garnishee summons was received seven days before the check was presented for payment to the bank on which it was drawn, and that the court erred in refusing to permit counsel for plaintiff to interrogate a witness (a representative of the garnishees) as to what the garnishees had done to stop payment of the check.

On the other side, the garnishees' position is that since they mailed the check in good faith to defendant O. L. Williams Veneer Co. before service of the garnishee summons, the garnishees were under no legal duty to stop payment of the check. We think the contention of the garnishees must be sustained. Waples on Attachments and Garnishments (2nd ed.), section 364; *Gretchell v. Chase*, 124 Mass. 366; Vol. 2, Morse on Banks and Banking (5th ed.), section 543; 28 C. J., section 187, p. 148; *Prewitt v. Brown*, 101 Mo. App. 254, 73 S. W. 879; *Brandfass v. Kohn*, 113 W. Va. 442, 168 S. E. 476; *Watt-Harley-Holmes Hardware*

*Co. v. Day,* 1 Ga. App. 646, 57 S. E. 1033; *Andrews v. Sasser,* 17 Ga. App. 482, 87 S. E. 717.

In Waples on Attachments and Garnishments the author says (sec. 364): "One is not liable to garnishment if he has paid what he owed the defendant in attachment by a bank check, though the latter may not have presented the check to the bank and drawn the money prior to the service of the process of garnishment upon the drawer of the check. It is true that the funds in the bank are still under his control, so that he might stop payment of the check; and, so far as the bank is concerned, he has the right to control the deposit; but he has no moral right to do so, considering his relation to the payee who has taken the check in payment or earnest of payment. At all events, the drawer, as garnishee, is not under the slightest obligation to countermand his own check for the purpose of enabling a professed creditor of the payee to attach the credit in his hands and suspend settlement of his account with the payee for an indefinite time."

In *Getchell v. Chase,* 124 Mass. 366, it was held that a check given and accepted as payment will entitle the drawer of the check to be discharged if summoned as trustee [garnishee] where the writ was served the day after the delivery of the check, although the check was not presented until a day after the service of the writ. The court there said: "Upon the facts stated in the trustee's answer, the check was evidently given by him and received by the principal defendant as payment, and operated as such, at least until presentment and refusal, which in this case did not happen. Nothing therefore was due from the trustee to the defendant at the time of the service of this process."

And in Morse on Banks and Banking, sec. 543, the author says: "And a check is always so far payment until dishonored, that, after its delivery, the drawer cannot be garnisheed as debtor of the payee in respect to the debt for which the check is given."

In section 187, 28 C. J., it is stated: "Payment by check is generally held sufficient to defeat subsequent garnishment *pro tanto* as long as the check has not been dishonored. . . . But the garnishment places the garnishee under no obligation to stop payment on the check, unless the check itself is still within his control, in which case it has been held that it is his duty to reclaim it."

In *Prewitt v. Brown,* 101 Mo. App. 254, it was held that where a purchaser had given a check to the seller for the purchase price, he was under no obligation to stop payment of the check although he had been served with garnishee summons before the check was paid by the bank on which it was drawn. The court there said (p. 259): "A purchaser in good faith who has given his check to a seller for the price of an article bought, has so far paid for the article that he is not subject to garnishment as the seller's debtor." Citing *Getschell v. Chase,* 124 Mass. 336, and other authorities.

To the same effect is the *Brandfass v. Kohn* case, 113 W. Va. 442, where the court quoted with approval from 28 C. J. the following (p. 444): " '*But the garnishment places the garnishee under no obligation to stop payment on the check, unless the check itself is still within his control, in which case it has been held that it is his duty to reclaim it.*' 28 C. J. 148."

From the foregoing and other authorities we are of opinion that a debtor who has delivered his check for a debt to his creditor may, on being served with garnishment summons, stop payment on the check, and the payment being stopped is subject to garnishment, but the debtor is under no legal duty to stop payment on the check.

Plaintiff, in support of his contention that the garnishees should have stopped payment of the check, relies upon sec. 21, ch. 11, Ill. State Bar Stats. 1935, and the cases of *Bank of Montreal v. Clark,* 108 Ill.

App. 163; *Binkley v. Clay*, 112 Ill. App. 332; and *Swope v. McClure*, 239 Ill. App. 578.

Section 21 provides: ''Persons summoned as garnishees shall thereafter hold any property, effects, choses in action or credits in their possession or power belonging to the defendant which are not exempt, subject to the court's order.''

In the *Bank of Montreal* case, James A. Morrison held a certificate of deposit issued by the Chicago branch of the bank. Afterward, on March 8, suit was brought against him in the superior court of Cook county, where he was served personally, and the Chicago branch of the bank was served as garnishee on the same date. After Morrison was served in Chicago he went to the Toronto branch of the bank and on March 9 delivered the certificate to the bank there, and the amount of it was placed to his credit in the Toronto bank; he then drew his check against the credit and it was paid. It was held that the garnishee bank was liable. Obviously the facts in that case are in no way similar to the facts in the case before us. There the money was in the possession of the Bank of Montreal at the time of the service of the garnishee summons on its Chicago branch.

In the *Binkley* case, 112 Ill. App. 332, the garnishee was served with summons and on the afternoon of the same day executed a draft to the principal defendant. It is clear that this case is not in point.

In the *Swope* case, 239 Ill. App. 578, it appeared that after the delivery of a check the maker of it, who had been garnisheed, endeavored to stop payment of it, and it was held that judgment discharging the garnishee was proper. But the court there did not hold that it was the duty of the garnishee to stop payment of the check. That question was in no way involved.

Since there was no money in the hands of the garnishees at the time of the service of the garnishee sum-

mons, the judgment of the trial court discharging the garnishees, and the order of the court vacating the judgment entered against the principal defendants, who had been served only by publication, were proper.

The judgment and order of the circuit court of Cook county are affirmed.

*Judgment affirmed.*

Matchett, P. J., and McSurely, J., concur.