**Arthur MOYNES and Oscar Ginsberg, d/b/a M & G Provision Co., & Emerald Meat Co. & Chico Chile, Inc., Plaintiffs-Appellants,**

v.

**NATIONAL SURETY CORPORATION, Defendant-Appellee.**

**No. 12673.**

United States Court of Appeals Seventh Circuit.

Dec. 23, 1959.

Jerome L. Fels, Harry L. Rudnick, Sydney Wolfe, Chicago, Ill. (Rudnick & Wolfe, Jason N. Gesmer, Chicago, Ill., of counsel), for plaintiffs-appellants.

Roger D. Doten, Chicago, Ill. (John P. Hampton, Dent, Hampton & Doten, Chicago, Ill., on the brief), for defendant-appellee.

Before HASTINGS, Chief Judge, CASTLE, Circuit Judge, and PLATT, District Judge.

HASTINGS, Chief Judge.

Plaintiffs-appellants, Arthur Moynes & Oscar Ginsberg, d/b/a M & G Provision Co., & Emerald Meat Co. & Chico Chile, Inc., (insured) filed an action in the Municipal Court of Chicago, Illinois, against defendant-appellee, National Surety Corporation, (company). Subsequently, the case was properly removed to the district court below. In-

sured sought to recover on a mercantile robbery insurance policy issued to them by the company. The alleged loss was sustained in an interior robbery occurring at about 6 P.M. on March 10, 1958.

The company answered the complaint and asserted as an affirmative defense that the policy was canceled pursuant to its terms, effective March 10, 1958, at twelve o'clock noon, and that insured's alleged loss did not occur until later that day, at which time such policy was not in force or effect. The company then filed a motion for summary judgment, supported by affidavits, predicated solely on its affirmative defense of cancellation. The trial court granted the company's motion for summary judgment, dismissed the action and entered judgment against insured for costs, from which judgment this appeal is taken.

The parties agree that this case is governed by the law of Illinois and that there is no case directly in point. They also concede that there is no issue of fact.

The contested issue is a legal one—whether under undisputed facts, the notice mailed by the company on March 3, 1958 canceled the policy effective twelve o'clock noon on March 10, 1958, prior to insured's alleged loss at about 6 P.M. on the same date.

The pertinent provisions of the policy are:

"The Policy Period shall be from April 5, 1957 to: April 5, 1958 at 12 o'clock noon, standard time, at the location of the premises." (Declarations, Item 4, on the face of the policy)

"13. Cancelation. This policy may be canceled by the named insured by mailing to the company written notice stating when thereafter such cancelation shall be effective. This policy may be canceled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than five days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date of cancelation stated in the notice shall be the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing. * * *" (Condition 13, in the body of this policy)

Thus, in unambiguous language, the policy provides for cancellation by either party after specified notice by mailing and that "*the effective date of cancelation stated in the notice shall be the end of the policy period.*" There is no reference in the policy fixing the end of the policy period following cancellation except the words "the effective date" to be stated in the notice.

It is undisputed that on March 3, 1958 the company mailed to insured a notice of cancellation of this policy. This notice is a printed form with several open spaces and "boxes" to be filled in by the company giving appropriate information about the policy to be canceled. At the top of the notice, printed in bold type, appears the following statement:

"Notice Is Hereby Given That The Policy Or Bond Designated Herein Is Canceled In Accordance With Its Terms, Such Cancellation To Be Effective On The Date Set Forth Herein. At The Hour On Which Such Policy Or Bond Became Effective, Or At Such Other Hour, If Any, Specified In The Cancellation Provisions Of Such Policy Or Bond. * * *"

In the box captioned "Cancellation Effective" there was typewritten, "March 10, 1958."

There is some dispute between the parties concerning the punctuation in the middle of the above printed statement. The trial court thought it was a comma. It appears to us to be a period. In any event, we think it is unimportant in determining the issue before us. Where the effective date of cancellation was typed in the appropriate box, no specific hour on that date was indicated.

It is undisputed that the robbery occurred at about 6 P.M. on March 10, 1958. If the policy was canceled effective at twelve o'clock noon on that date, there was no coverage; otherwise, the policy was in force until midnight on that date, and insured will recover. Without giving any reasons (other than to italicize the words *"at the hour on which such policy* or bond *became effective"* in the foregoing statement printed at the top of the cancellation notice) or citing any authority, the trial court in a short memorandum stated that "the matter becomes one of the interpretation of the contract and the cancellation notice. The court finds that the effective date of the policy was from 12 o'clock noon as the effective time of cancellation. The policy was accordingly not in effect at the time the loss occurred." We find ourselves in disagreement with the conclusion reached by the trial court.

The company argues that Condition 13 in the policy authorizes cancellation at a particular hour of the day on which the cancellation is to become effective and that the notice of cancellation fixes that time as twelve o'clock noon. We do not read that meaning into the words used. The cancellation clause in Condition 13 provides for an effective *date* and makes no reference to an effective hour. The notice of cancellation does not make cancellation effective at twelve o'clock noon, since the only mention of the effective time of cancellation is that inserted by the company itself in the appropriate place as "March 10, 1958." We do not agree that resort can be had to the printed statement at the top of the notice of cancellation as controlling the policy provisions.

■ The notice of cancellation must conform to the provisions in the insurance policy, and cancellation can only be effected through strict compliance with the terms of the policy. 45 C.J.S. Insurance § 446, p. 79 and § 449, p. 86; 29 Am.Jur., Insurance, § 275, p. 257. See, Columbia Casualty Co. v. Wright, 4 Cir., 1956, 235 F.2d 462, 464, 63 A.L.R.2d 564, affirming D.C., 137 F.Supp. 775, 778.

■ The policy provision governing the conditions of cancellation makes specific reference to the "effective *date"* and as such comes within the general rule which disregards fractions of a day. For a statement of the general rule, see 86 C.J.S. Time § 12, p. 846, and § 16, p. 900. We find nothing in the policy itself indicating that the parties have contracted in any other manner or have otherwise expressly limited themselves.

■ The fact that the policy provides on its face that it shall extend from April 5, 1957 to April 5, 1958 at twelve o'clock noon cannot be *inferentially* incorporated into other policy provisions, including the cancellation clause. See, Garelick v. Rosen, 1937, 274 N.Y. 64, 66–67, 8 N.E. 2d 279, 280; Penn Plate-Glass Co. v. Spring Garden Ins. Co., 1899, 189 Pa. 255, 259–260, 42 A. 138; Malin v. Netherlands Ins. Co., 1920, 203 Mo.App. 153, 156–157, 219 S.W. 143, 144; Gordon v. Home Indemnity Co., 1936, 121 Pa.Super. 241, 248–250, 183 A. 427, 430–431.

Since the parties did not expressly contract in the policy to provide for cancellation effective at any time other than on an effective *date*, we think the general rule is applicable as expressed in 29 Am. Jur, Insurance, § 284, p. 264:

"[P]olicy provisions for cancelation generally require that such cancelation be made upon notice to the insured for a prescribed period, which is usually five days. It is lawful for the parties to a contract of insurance to stipulate in the policy that the insurance shall begin at noon and expire at noon of the days named, and such an agreement becomes the special rule for the fixing of dates so referred to, for its object is to avoid possible dispute on the fundamental basis of any liability for loss; but such rule should not be applied to the five days' notice of cancelation in the policy, since the better rule to apply to these computations is the general one of excluding the first day and counting the days as legal days, beginning and ending at midnight."

We hold that the district court erred in finding that the policy was not in effect at the time insured's loss occurred and in ordering summary judgment. The judgment of the district court is reversed, and this cause is remanded for further proceedings not inconsistent with this opinion.

Reversed.